**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CECIL G. HICKLIN,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 06-1398** |
| | ) | **Electronically Filed** |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**February 23, 2007**

**I.      Introduction**

Cecil G. Hicklin brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application pursuant to the Social Security Act ("Act") for Supplemental Security Income ("SSI") Disability Insurance Benefits ("DIB").  Consistent with the customary practice in the Western District of Pennsylvania, both parties have submitted cross motions for summary judgment and the record developed at the administrative proceedings.

After careful consideration of the Administrative Law Judge's ("ALJ") decision, the memoranda of the parties, and the entire record, the Court finds the ALJ's decision that plaintiff is not disabled is supported by substantial evidence.  The Court therefore will deny plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and enter judgment in favor of the Commissioner.

1

**II.      Procedural History**

Plaintiff, who was born on November 3, 1962, filed his application for SSI and DIB on December 5, 2002, alleging disability from work as of December 1, 2001, due to severe pain in both knees.  Following administrative denial of benefits, plaintiff appealed and a hearing was conducted before ALJ William E. Kenworthy on September 9, 2004, at which plaintiff, represented by counsel, testified, as did a vocational expert ("VE").  On October 15, 2004, the ALJ denied the plaintiff's claim for benefits, finding that plaintiff was not disabled at any time through the date of his decision.  R. 19.  The ALJ further found that he retained the residual functional capacity ("RFC") to perform tasks at the sedentary exertional level, lifting no more than 10 pounds and remaining seated most of the work day with a sit/stand option, limited to tasks of a simple, repetitive nature, and that such jobs were available in the national economy, including assembler, sorter and routing clerk.  R. 19.

On August 25, 2006, the Appeals Council affirmed the ALJ's decision, which thus became the final decision of the Commissioner.  Plaintiff then filed his complaint herein seeking judicial review of the Commissioner's final decision.

**III.     Statement of the Case**

Plaintiff has undoubtedly suffered both physical and mental impairments over the past few years.  In addition to his history of degenerative disorders of the knees, he has also suffered from depression and bipolar disorder, alcohol abuse (currently in remission), and a compression fracture of L1 due to osteopenia.  However, as was stated by the ALJ, based upon the report of state agency reviewer, Edward Zuckerman, Ph.D., and the treatment records with Paul Lange, M.D., plaintiff's depression has responded well to treatment with psychotropic medication, and

2

with his abstinence from alcohol, there is no more than a mild limitations of activities of daily living, social functioning, ability to maintain attention, concentration and pace.  The ALJ also noted that following his arthroscopic surgery on his right knee, which was performed by David Wilson, M.D., Dr. Wilson noted a full range of motion with only a trace of effusion,  R. 125-135, and that consultative examinations performed by orthopaedic surgeons, Ernest Swanson, M.D. and Constance Chu, M.D. revealed that plaintiff is only a candidate for conservative therapy (physical therapy/weight management/steroid injections), that no further surgery was recommended, and that the overall examination and radiographs showed "relatively benign" conditions.  R. 166 and R. 182..

The ALJ made the following specific findings:

1. The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's degenerative joint disease of the knees, degenerative disc disease, a compression fracture of L1 due to osteopenia, depression and a history of alcohol abuse in remission are considered "severe" based on the requirements in the Regulations 20 CFR § § 404.1520(c) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons and to the extent set forth in the body of the decision.

6. The claimant has the residual functional capacity to perform tasks at the sedentary exertional level, lifting no more than 10 pounds, and remaining seated most of the work day with a sit/stand option, limited to tasks of a simple, repetitive nature.

7.      The claimaint is unable to perform any of his past relevant work (20 CFR § § 404.1565 and 416.965).

8.      The claimant is a "younger individual" (20 CFR § § 404.1563 and 416.968).

9.      The claimant has a "limited education" (20 CFR § § 404.1564 and 416.964).

10.     The claimant has no transferable skills from any past relevant work (20 CFR § § 404.1568 and 416.968).

11.     The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR §§ 404.1567 and 416.967).

12.     Although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform.  Examples of such jobs include work as an assembler, sorter or routing clerk.

13.     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

R. 18-19.

In his appeal from these findings and determination, plaintiff argues that the ALJ did not properly consider plaintiff's testimony regarding his allege disability, that the ALJ failed to properly consider certain medical evidence, and that his credibility determinations were in error.

## III.    Standards of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute.  42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2].  Section 405(g) permits a district court to review

---

[1] Section 405(g) provides in pertinent part:
    Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a).  *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

    <u>Substantial Evidence</u>

    If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:
    The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

*Richardson,* 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).  The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner.  *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder.  *Rutheford*, 399 F.3d at 552.  In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he

6

grounds upon which an administrative order must be judged are those upon which the record

discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is

some "medically determinable basis for an impairment that prevents him or her from engaging in

any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d

775, 777 (3d Cir. 1987);  42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the

claimant must show "he is unable to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is

entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential

evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995).  *See Sullivan*, 493 U.S. at 525.  The

Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*,

186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently
> engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found
> to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*,
> the Commissioner must determine whether the claimant is suffering from a severe
> impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments
> are "severe", she is ineligible for disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the claimant's
> impairment to a list of impairments presumed severe enough to preclude any gainful
> work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or
> its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to

consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted).  *See also Rutherford*, 399

F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not

currently engaged in gainful employment because she (2) is suffering from a severe impairment

(3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her

lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant

satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the

burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant

numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to

qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she

meets the criteria for one or more of a number of serious Listed Impairments delineated in 20

C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed

Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59;

*Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777.  Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy.  *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59;  *Kangas*, 823 F.2d at 777.

Vocational Expert - Hypothetical Questions

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert.  *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (citations omitted).  Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as  uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings on claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala*

9

*v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to VEs).[3]  *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'").  Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." Rutherford, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); see also *id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)).  While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand.  *Boone*, 353 F.3d at 206.

_____

[3]       Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

Multiple Impairments

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . .”). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in

11

combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli ,* 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981).  He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence.  *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir.

1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.   *See* 20 C.F.R. § 404.1529(c).  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated:  "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.   The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195.  That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at  1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067.  Where a claimant's testimony

13

as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ

may discount claimant's pain *without contrary medical evidence. Ferguson v. Schweiker*, 765

F.2d 31, 37 (3d Cir. 1985);  *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers*

*v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998).  "Once a claimant has submitted sufficient

evidence to support his or her claim of disability, the Appeals Council may not base its decision

upon mere disbelief of the claimant's evidence.  Instead, the Secretary must present *evidence to*

*refute the claim.  See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's

testimony is reasonably supported by medical evidence, the finder of fact may not discount the

testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d

Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

          In making his or her determination, the ALJ must consider and weigh all of the evidence,

both medical and non-medical, that support a claimant's subjective testimony about symptoms

and the ability to work and perform activities, and must specifically explain his or her reasons for

rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112,

119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical

records and documents for that of a treating physician; "an ALJ is not free to set his own

expertise against that of a physician who presents competent evidence" by independently

"reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37

(3d Cir. 1985).

          <u>Medical Opinions of Treating Sources</u>

          "A cardinal principle guiding disability eligibility determinations is that the ALJ accord

treating physicians' reports great weight, especially 'when their opinions reflect expert judgment

based on a continuing observation of the patient's condition over a prolonged period of time.'

*Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d  Cir.1987)) . . . ."

*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must

weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence

for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional

citations omitted). The ALJ must consider all medical findings that support a treating physician's

assessment that a claimant is disabled, and can only reject a treating physician's opinion on the

basis of contradictory, medical evidence, not on the ALJ's own credibility judgments,

speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

> Moreover, the Commissioner/ ALJ

>> must "explicitly" weigh all relevant, probative and available evidence. . . . [and]
>> must provide some explanation for a rejection of probative evidence which
>> would suggest a contrary disposition. . . . The [Commissioner] may properly
>> accept some parts of the medical evidence and reject other parts, but she must
>> *consider* all the evidence and *give some reason for discounting* the evidence she
>> rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43

(although ALJ may weigh conflicting medical and other evidence, he must give some indication

of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed

to mention significant contradictory evidence or findings, Court was left to wonder whether he

considered and rejected them, or failed to consider them at all, giving Court "little choice but to

remand for a comprehensive analysis of the evidence consistent with the requirements of the

applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a

residual functional capacity determination, the ALJ must consider all evidence before him. . . .

15

Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

However, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion  cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination or decision of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

16

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[4]  Medical opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they always must be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

---

[4]       Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual  examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in  paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[5] these Social Security Rulings require that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment

---

[5] SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to past relevant work, and whether an individual is "disabled" under the Act.

relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

<u>State Agency Medical and Psychological Consultants</u>

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

**V. Discussion**

In his brief in support of summary judgment, plaintiff argues that there is not substantial evidence to support the ALJ's decision.  In support thereof, plaintiff contends that the ALJ failed to properly consider plaintiff's testimony establishing the severity of his conditions and the effects said conditions have on his daily activities.  Plaintiff also argues that the ALJ failed to

properly consider valid medical evidence of record, including certain findings by psychologist, Craig Hartmann, Ph.D. regarding plaintiff's Global Assessment Functionining (GAF) score of 48, and treating physician Dr. Covington's records that indicated plaintiff had a diagnosis of bipolar disorder and passive suicidal thoughts.  Finally, plaintiff contends that the ALJ further erred because he allegedly did not adequately explain why plaintiff's testimony was less than fully credible.

1.   The ALJ Properly Considered Plaintiff's Testimony of His Activities of Daily Living

Plaintiff states that the ALJ failed to consider certain testimony, including that due to his depression, "he does not do much out of the house and stays at home," that he is confined to his room and "does not want to see anyone for ten hours each week."  Doc. No. 10 at 4.

Although the ALJ does not specifically mention this testimony in the decision, the ALJ does state that plaintiff has been treated with a diagnosis of bipolar disorder, the treatment records indicate most recently that plaintiff described himself as "doing OK," that the mood swings have been less extreme with medication, and that he denied any depression.  Further, the ALJ, in summarizing the plaintiff's testimony from the hearing, stated the following: "[a]lthough the claimant alleged in his testimony that he is depressed, statements made to a treating physician during a treatment relationship are considered to be inherently more reliable than those made at a hearing for the purpose of achieving financial gain."  R. 15.

Plaintiff also contends that the ALJ failed to consider his testimony regarding his physical impairments wherein he stated that he is limited to sitting for 10 to 20 minutes and for most of

the day he lies down to relieve his back and knee pain, and that he does not go to movie theaters or restaurants because he cannot sit for prolonged periods of time.

In the decision, again, although the ALJ does not go specifically recount all of the above testimony with regard to plaintiff's activities of daily living, the ALJ stated the following:

> Mr. Hicklin testified that he experiences severe pain in his back and that he cannot tolerate either prolonged standing or prolonged sitting.  He also testified that he also experiences pain in his knees.  He mentioned that he went hunting last winter and returned to the truck after one half-hour because of pain.  The claimant's testimony that he experiences pain is deemed to be credible, since pain might reasonably be expected from the degenerative changes in his knees and back.  However, the pain is not so severe as to preclude work activity within the residual functional capacity described herein.  In his conversations with Dr. Lange, the claimant has indicated improvement and reasonable control of pain under his current medication regime.  (Ex. 10F).

R. 16.

The Court finds that the ALJ adequately recounted the plaintiff's testimony regarding the impact of his physical and mental impairments on his activities of daily living, and the ALJ did not error in failing to detail a verbatim list of plaintiff's complaints.  Moreover, the ALJ did not overlook or misstate plaintiff's testimony regarding his activities of daily living - - rather, the ALJ properly summarized plaintiff's complaints and subjective allegations of pain.

    2.    <u>The ALJ Properly Considered All Record Medical Evidence</u>

Plaintiff further argues that the ALJ failed to properly consider certain findings of Drs. Hartmann and Covington because he did not mention Dr. Hartmann's opinion that plaintiff had a Global Assessment Functioning (GAF) score of 48 and Dr. Covington's statement that plaintiff had bipolar disorder.  After reviewing the report of Dr. Hartmann, this Court finds that Dr. Hartmann included under Axis V - "48/unknown" in his diagnosis.  R. 175.  It would appear

then that Dr. Hartmann's assessment of the 48 score was unknown.  This Court finds that the

omission of the GAF score, in and of itself, does not equate to a finding that there was not

substantial evidence to support the decision of the ALJ.  After reviewing the report of Dr.

Hartmann, this Court finds that the ALJ adequately discussed the findings of Dr. Hartmann as he

stated the following:

> A consultative examination was performed on March 31, 200 by Craig
> Hartmann, Ph.D., a psychologist.  It was reported that the claimant related in
> a style that suggested controlled anger.  His appearance was disheveled and
> his mood irritable.  It was noted that he had a history of regular alcohol
> abuse, and he reported last drinking the previous day, when he consumed
> four beers.  He had a history of alcohol related blackouts and he had been
> fired from at least four jobs because of inappropriate drinking.  At this
> examination, he smelled of alcohol, but did not appear to be intoxicated.  He
> was able to demonstrate immediate recall of six out of seven numbers, and
> his intelligence appeared to be within normal limits.  The only Axis I
> diagnoses were listed as alcohol dependence and alcohol induced mood
> disorder with depressive features.  (Ex. 8F).

R. 15.

Furthermore, plaintiff's argument that the ALJ failed to consider Dr. Covington's

diagnosis of plaintiff as suffering from bipolar disorder is belied by the record.  The ALJ, in

explaining why he did not find plaintiff to be entirely credible, specifically stated the following

with regard to Dr. Covington's treatment of plaintiff: "[t]his conclusion is based in part upon

current treatment records from Community Mental Health where the claimant has been receiving

mental health treatment from Dr. Covington.  **He has been treated with the diagnosis of**

**bipolar disorder**."  R. 15 (emphasis added)."

In essence, the ALJ determined, after considering all of the medical evidence (including

reports from Drs. Zuckerman and Lange) that plaintiff's depression has responded well to

22

treatment, and that when he chooses to abstain from alcohol use, his mental impairments pose no more than a mild limitation on his activities of daily living, his social functioning, and his ability to maintain attention, concentration and pace.  Accordingly, this Court finds that there is substantial evidence to support the ALJ's conclusions regarding plaintiff's mental impairments and its effect on his ability to work.

       3.     <u>The ALJ Adequately Explained Why He Found Plaintiff's Testimony To Be Less Than Fully Credible.</u>

      Finally, plaintiff argues that the ALJ did not adequately explain his reasons for finding plaintiff to be less than fully credible.  After reviewing the ALJ's decision, this Court disagrees.  The ALJ cited several reasons within the body of the decision for why he found plaintiff less than fully credible.  For example, the ALJ stated that plaintiff testified at the hearing that he had remained abstinent from alcohol use since 2001 when he started dating his wife.  The ALJ stated, "[h]is testimony in that regard is not considered to be entirely credible, since he admitted to Dr. Hartmann in 2003 that he was still drinking."  R. 15.  Further, the ALJ noted that in the most recent treatment records, he denied depression and stated that he was "doing OK," yet at the hearing, he testified that he is depressed.  The ALJ adequately explained that he chose to credit the statements plaintiff's made during his treatment relationship with his physician because they were "considered to be inherently more reliable than those made at a hearing for the purpose of achieving financial gain."  R. 15.  Moreover, the ALJ did note that he found plaintiff's testimony that he experiences pain credible, but not to the extent claimed by plaintiff based upon the residual functional capacity that was established by the records and reports of the treating and reviewing physicians.  The ALJ noted that contrary to plaintiff's assertions at the hearing, in

conversations with Dr. Lange, plaintiff indicated improvement and reasonable control of his pain with the use of his current medications.  As stated hereinabove, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705.  The above examples demonstrate that the ALJ has identified and specified his basis for such a conclusion.  Accordingly, this Court finds that the ALJ adequately explained his reasons for finding plaintiff less than fully credible, and those credibility determinations will not disturbed by this Court.

**VI.  Conclusion**

The ALJ's determination is supported by substantial evidence, and must therefore be upheld under the appropriate standards of review.  Accordingly, the Court will deny plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and enter judgment in favor of the Commissioner.

An appropriate Order will follow.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:  All counsel of record

24